that we're going to hear this morning, and it looks like the lawyers are ready for the next case. It's Global Network Management, Ltd. v. CenturyLink Latin American Solutions, and Andre Raichelson is here for the appellant. Scott Diamond is here for the appellee, and Mr. Raichelson, you may begin with your argument. Thank you, Your Honors. This case is really actually very simple, because what it boils down to is whether there was a bailment, there are other counts in the complaint, but essentially this case started in state court. It was remanded to the federal court, and then there was a motion to dismiss. I entered the case at that point and asked the lower tribunal for leave to amend. The lower tribunal said, I'll give you one more chance. Granted, we never even had the first chance, but fine, we have one chance for leave to amend, which fundamentally, frankly, is improper. But beyond that, we amend, and there is deposition testimony, so we include that deposition testimony. We're very clear in what constituted the bailment. Starting with that position, the argument from the appellees is that there wasn't any exclusive control. I don't know what case they were reading, I don't know what case the lower tribunal was reading, but it's very clear. We have the testimony of John Connolly, and the testimony of John Connolly says pretty much that there is a tier one facility that these chips are in. And what is a tier one facility? Well, a tier one facility is defined by the Cybersecurity and Infrastructure Security Agency. That's John Connolly testifying. And to get into this secure facility, kind of like how we got into this courtroom, but a step further, pretty much kind of like the infrared cameras and all of that stuff. One would have to apply for a ticket. One can't just come into the tier one facility, even if they're a customer. They would apply for a ticket, that ticket has to be approved. They go through the front door, they're escorted through. They go through a metal detector, just like we all came here for this court. After that, they're escorted to the elevator. That is a two-person escort. Those two people take my client up to the sixth floor. Those two people leave. More people come and escort him to his actual server, to the server room, and then to his server area. That is the structure of a tier one facility. And then I'm going to read from Appendix Tab, it's three, paragraph 37, and this is the testimony of John Connolly, which is incorporated in the amended complaint. I don't care what customer you are, or which data center part of the facility, there would be an escort. It would have to be predetermined, pre-scheduled, coordinated. If you showed up ad-hocly, for whatever reason, you would have to still call so someone can answer the door for you, and if they do, did not know then, they would not let you into the building. Why does that matter for implied bailment? You have access. It's just cumbersome. But you have access. The contract, the initial contract, which gets amended and gets handed down and gets assigned, says that you've got access to the facility and to your equipment. You're 100% right, but so did Julia have access in Puritan Insurance Company versus Butler Aviation, Palm Beach. It's 11th Circuit case from 1983. And in that case, there was even more access. In fact, Julia had the keys. The only thing that was tied down was the plane. So Julia had the keys. Yes, but the contract is very different because here, you are not just giving your equipment for storage purposes, right? You are also buying computer services. Transmission services, internet services, right? That's one of the reasons why you're doing it. So it's not just a storage facility. You're right. It's not just a storage facility. So then why is that a bailment, an implied bailment, which is your claim? Not that there's a bailment. You said there's an implied bailment. Right. So whether it's expressed or implied, I think that it's expressed meaning that it's in some kind of contract and implied meaning that it's not within some kind of contract. I think that it's a bailment because you're 100% right, Judge Jordan. There are multiple aspects to this agreement. So you can have, for example, a bailment as part of the provision, and you can have another part of the agreement that is as it pertains to security, which is actually part of the implied contract, in fact, and contract and law claims that are in our amended complaint that addresses those particular issues. The bailment issue addresses that part that you've identified in the transaction. The other parts that you've identified within the transaction are in different counts. So I think you're 100% right, but I think that where you're going with this, and correct me if I'm wrong, I could be reading, Your Honor, incorrectly, but whether my client has actual access, whether it's cumbersome or not, and we have to look at other cases where access was cumbersome, and the court did find a bailment, and that's why I cited to a Puritan insurance company, and that's what the lower tribunal even relies on. The lower tribunal relies on that case. The appellees rely on that case. We rely on that case. But if you have a situation where Julia can walk into an airfield, no ifs, ands, or buts. They've got the key. They can go in, and the plane is tied down, and the court says, Nope, that's a bailment because they have a secure fencing. In a bailment, you're always going to be able to get your stuff back, right? I mean, that's not, I mean, the whole point is you give your stuff to somebody else, and they keep it for you, and they give it back to you as you need it, right? I mean, that's what a bailment is. Yes, but I think why I'm harping on this, and I think why it's been made such a big ado, is because there's an element of bailment that this court found, that the Florida State Court found, that relate to exclusive control. So what is the gambit of exclusive control? And you're 100% right. I mean, a bailment is just that. So their exclusive control has to mean something. It can't just be words to the wind. And according to Puritan Insurance Company, what it means is, I believe it means the ability to possess, and the ability to exclude. So for example, in Puritan Insurance Company, they could, in theory, this didn't happen, but they can in theory lock the door. I mean, the guy had a key, but they can lock the door. In this case, you have John Connolly testifying that we're not going to let you in, even if you are a customer. So I guess that leads to, if there's exclusive control in Puritan's company, how is this case not exclusive control? Can I ask you a question about, so I think, I think that there is exclusive control over the property in the sense that, you know, they can lock out whoever. But it seems to me like the wrinkle in this case is that, to go to what Judge Jordan mentioned, the property is being stored in this facility so that the person who is giving the property can use it, right? I mean, it's a server facility where you're using the property from a distance, even if it's being held in this facility. What should we do with that aspect of this? Does it matter? I don't think it does matter. And it's what I responded to with Judge Jordan. There are multiple counts in this complaint, in this amended complaint. And you can have a contract where, and I guess the best example is, if you have a services contract to install an AC in your house, you have part of the contract, which is a services contract, and then part of the contract, which is a maintenance contract. They have two different, I guess, clauses and two different duties, I guess. One is a duty to install, one is a duty to maintain. And this one, you have a similar situation. You have part of the contract, which is a duty to store and safe house the units, which is the bailment. The other part of the unit is to maintain a particular security, a tier one facility, conduct investigations if something happens, which didn't happen, and then provide electricity and provide, I guess we can call it digital access. And in my brief, I distinguish between physical access and digital access. But I guess that's what I'm going at. So let's just assume that you've absolutely got the physical aspect of this in your favor, and there's no question that they have exclusive physical possession of these chips, I guess is what I'll call them. So doesn't it undermine your bailment theory that you can still access the chip, or does it undermine your bailment theory that you could still access the chips remotely and use them remotely while they're storing them? Not really, because if you have, you don't have access to the chips remotely, you have access to the data on the chips. So it's not like I can, just like you probably have an iCloud account or a Gmail account, you don't have access to the server room, you don't have access to the chips, you can access the data, and you pray to God every single day that no one deletes that data. But the physical chips are there. And then, very briefly, my time is almost up. We had an implied contract in law, implied contract, in fact, based on that second provision that we were discussing about the electrical component, the security component, and the lower tribunal pretty much said that we've only alleged conclusory statements, even though we've alleged from, we've taken from the deposition, and that we should not be granted leave to amend, and we had our one bite at the apple, and that's it. And the case law that I said... You were given an opportunity to amend your complaint. What would you say differently? If I were given an opportunity, well, I would, as it pertains to the bailment, I would say nothing different. As it pertains to the contract implied in law, I guess there was an issue of whether I have to plead that there was no at law. So I guess I would add a couple of phrases to establish that, and as well as add certain things from the deposition that were required. I don't think that any of those counts are so fatal to say that, you know, one and done. Have a nice day. All right. We have your argument. Thank you. Thank you. Mr. Diamond. Thank you, Your Honor. May it please the court, Scott Diamond of Diamond Kaplan Rothstein, with my co-counsel, Elliot Kula. And I'm going to jump right into the bailment issue. At its heart, this case has always been about GNM's effort to get more security than they bargained for. This is a very detailed contractual case where these parties, at a very high level, negotiated a series of contracts. And early on in the first case in front of Judge Ruiz, GNM tried to plead breach of those contracts. Judge Ruiz looked at them and said, they don't provide the duties that you're asking us to imply, and that case was rejected. This is the second effort against an affiliate. And in this case, they tried some different theories, again, in an attempt to get security obligations beyond the scope of the contract and beyond the security obligations that were bargained for. Bailment is one of the two ways, one of the three ways they've tried to do that. And on the bailment issue, as I think Judge Jordan has pointed out, this isn't a cold storage facility, this isn't a warehouse, this is a data center. And it's different in kind from those other types of cases, and even from the FBO cases like Puritan, for two important reasons, one of which has been discussed on one side, one on the other side. The issue about control. I would take issue with Judge Brashear's position that we maintain exclusive control, because the law is very clear on this, we cite Southwest Air Conditioning System, it's about the best state court articulation of that standard. And what that says is you've got to be able to exclude for the time of the bailment the possession of the owner, and it's got to result in an actual legal change as well as physical possession of the property. And it talks in terms of both exclusive use and exclusive possession. So let's talk about the owner's position. There is a contractual right in the documents attached to the complaint to access this facility 24-7. That is in black and white, and they've pled it by attaching that document. So why should that matter, that they have the right to do it, if they can't physically do it without your permission? Well, because they don't need our permission. And that's... I mean, now wait a minute, wait a minute. I thought that there were locked doors that they didn't have the key to. Well, that is true. So then they need to give them the key. They have the legal right to it. Yeah, and so why should the legal right matter? That's what I'm trying to figure out. For this purpose of exclusive possession, why should the legal right to visit their property matter when, as a practical matter, they can't do it without your say-so? Well, because they have the legal right to demand it. Okay, that's not answering my question. Why should that matter? It matters because the standard here is we've actually got to be able to deprive them of access. We have to have such a possessory interest that we can tell them no. And the allegations of the complaint make it clear that we're not allowed to tell them no, because they have a legal contractual right to 24-7 access. And 24-7 is another way of saying 100% of the time. If he shows up, and even with regard to Mr. Connolly's testimony, he talked about ad hocly. What if he shows up without having called in advance? Even as alleged in the complaint, he says, you just have to call and say I'm here. And then you've just got to prove that you are who you say you are. You have the legal right to walk in the door of that building 24-7. And there's a reason for this judge that's important to the use issue. Yeah, so on this legal right thing, I just, once again, I'm just, I really, I think you had a good answer there. But just to try to understand this, you know, the classic case of bailment is I give you, you know, it's $18.90, and I give you my cotton, and you put my cotton in your warehouse to hold for me. So are you suggesting that to have a bailment, I have to say, you just keep my cotton for as long as you want to, and I have no legal right to like see it or inspect it? That the only kind of bailment, a bailment can only exist if I just give you my cotton and like I have no legal right to get it back or inspect it? The case law talks about for the term of the bailment, you have to have the legal right to exclude someone. And for example, the classic sentence is a pawn shop. I hand my watch into a pawn shop. There's going to be a time when I could show up later and hand you my ticket. It's probably not three in the morning. Maybe it is. But if it's, if the pawn shop takes it and sells my watch, they had the right to do that. They have the legal right to possess it. They have the legal right to sell it to somebody else. That's sort of the classic arrangement. And the reason it's different in this case, Your Honor, is remember what we're dealing with here. This is a data center that runs an international messaging service. So GNM runs Telegraph Messenger. So all over the world, folks are messaging at all times. And let's say at four in the morning, Western Europe goes out. So my teenage kids can't text each other in the middle of the night. Well, GNM has to have the right to show up at the data center to fix its servers right then and there. So what service like GNM would ever give to an entity like Level 3 or to LATAM the right to say, yeah, sorry, you can't come in now. You know, we're a little short-staffed. You can come back in six hours. No, the nature of this center has to be that you were entitled to 24-7 access and you have contracted for it. And this gets to Judge Jordan's point. Not only can you get in there to fix that server at any time, day or night, bring it in, take it out, do whatever you want with it. But at the same time it's sitting in there, it's running the network. This is not a warehouse where it sits in there and when I need my furniture back, I go back and get it. The whole purpose of this data center is to use what is in the data center. And that's why the standard saying use and possession is important because you got to have both. I don't believe you got possession, but you certainly don't have use. You can have a service being provided through a bailment, right? Think of a car that you turn into a shop to get repairs done. The repair shop has your car. It's going to have it for a week, but it's providing a service. You can have a bailment in that sort of a circumstance. Absolutely. Even though you're having something done to your property or with your property when it's in somebody else's possession. I agree with you, your honor. The service is being provided to you. But the question here is, as the bailee, the person giving it to you, let's say that item is a taxi. And so I've given it to you to repair my taxi. You're doing me a service, that's why it's there. But I can't use my taxi while it's there. I can't make money on my taxi while it's there. Same with a plane. So what about, so what about, I mean, I think this is an interesting aspect of this case. What about the fact that you can't use, that here they're arguing that the physical items were taken. And when you're talking about use, you're talking about use of sort of, like he said, like the data, the cloud, you know, the cloud, the data was not stolen. It was the physical items. Why should the ability to use the sort of the data kind of manifested by the physical items matter when we're talking about the physical items and the bailment of the physical items themselves? Well, because I think these are inextricably intertwined, your honor. You can't use the data without having it on memory. You can't use the memory without having it on a server. You can't use the server without attaching it to the internet. This is a holistic concept. And I know it's very, the concept of what is data, what is memory, where does it live? I don't understand it. It's all very complicated. But I know it lives on a chip, and I know that chip needs to be in a server. And those two things working together allow functionality. In this instance, that memory chip, they're talking about the theft, not of information off the chip. They're talking about the actual physical theft of the chip. And that's my point. So why should it matter that the data sort of manifested? Here, let me give you a hypothetical and see what you think about this. So it's back in the old days where everybody's bailing all sorts of stuff, right? And I've got gold bars, and I give them to a bank to keep for me. Classic bailment. You keep these gold bars for me. I'll come back and get them in a year. And over the course of that year, I get loans based on my ownership of those gold bars. I trade ownership in those gold bars. I create like certificates that I sell to people and give them shares in the gold bars. I do all sorts of stuff to use the value of those gold bars, even though they're held in the bank. Does that use of the gold bars, sort of like metaphysical use of the gold bars, undermine the bailment? Well, I believe that's use once removed. And it is metaphysical by its nature. It's not actual. You're not actually walking in and out every day and handing off pieces of your gold bars to buy this. Exactly. And so I guess, okay, you say, well, that doesn't really matter. So how is that not the same thing that we have here, where we have the servers, the things in the facility, and they're being used, but they're not being used as Frisbees. They're not being used physically. They're being used sort of metaphysically. Well, because two things. First of all, it's very clear that level three is not using them. So LATAM doesn't use them at all. They're an active facility to be used by our customers. And the second thing is that they are being literally used at all times. Literally, what you pay for is connection to the internet because they're running a messaging service. So I think the fact that they are literally using what's in there day or night distinguishes it, for instance, from an aircraft case. If your airplane's tied down, you can't fly it. If your car's in the shop, you can't use it. If your shirt's in the dry clean, you can't wear it. In this case, the whole purpose of the shop is to allow you to use it the whole time it's there. And that's why this particular arrangement has never looked like a bailment. Everything is done by analogy in this area. And I understand this is a warehouse. This is cold storage. This is an FBO. But in this case, you have a very unique arrangement where the customer has 100% day or night access to walk in and out, do with the items as they will, take them, leave them. They can walk into their data center and destroy these chips with a hammer if they want. They've got complete control over their items and complete access. And then meanwhile, the whole time, they're literally being used to run their business. No second step metaphorical use of what we'd have to establish. Maybe they're there, maybe they're not. We're giving you credit for them, as in your gold bar example. If you have to have both exclusive use and exclusive possession, I think it's pretty clear that a data center doesn't give you either. And again, if we could exclude them from access to their own items, we wouldn't be a very good data center and no one would ever hire us. Let me give you a hypothetical removed from the allegations in this case. Your client completely fails to provide any security to the facility, leaves the doors open, somebody finds out, they pull up 18 wheelers to the warehouse entrance and they take out a customer's servers. What claims are available against your client? For each contract you are. Because the contract actually requires certain levels of security. So for example, when they decide to itemize it, I think paragraph 7 of one of the sub-agreements, security, this is what you have to have, access cards, card scanners. You have to, they have literally contracted for the rights for us to protect it from the world, just not to protect it from them. And that's what bailment means. I get to keep you out. You are hiring me and paying me to keep the rest of the world out. You're paying me to keep them safe, to keep them powered, to keep them connected to the internet. That's the nature of the data center. But if we just decided to not show up one day and left the doors open, we'd be a black and white breach of the contract and the case never would have gotten dismissed by Judge Ruiz on the first instance because he would have said, yeah, you got a contract that requires these access protocols and he didn't have any of them. So again, this has always been an effort to get beyond that security, to get additional levels of security that these very sophisticated parties never bargained for. And these folks had a lot of time and a lot of energy devoted to these contracts, saying what you're buying, what you're paying, and what you're getting. And this whole case, this whole series of cases has always been about, okay, that doesn't give me enough. How do I get past it? How do I imply an obligation that's not written in the contract? How do I find a legal obligation under a concept of bailment that's not written in the contract? These folks decided the level of security that they were paying for and that's what they got. And that comes into some of the other accounts. What's the best case you think there is for the proposition that a traditional bailment under Florida law requires exclusive possession? That you can exclude the owner of the property? That you must exclude the owner of the property? I think the best case of all the cases is that Southwest S&W air conditioning for two reasons. One, because it is the most fulsome articulation of the standard. It goes into very great detail about what it means to have full delivery of an item. It talks about exclusive use, exclusive possession, excluding the legal rights of the owner. So from just the point of view of what the legal standard is, it's very clear. But the second reason that case is very interesting is because it's a little like our case. It's a unique type of arrangement. These are vacuum machines that are bolted down to concrete slabs at gas stations. And they describe how the bolt could come in and take their cash out. They can fix the machines. They can use them. The gas station owner can move them around. But ultimately, even though they're bolted to the floor of the gas station, it's not a bailment because the owner can come in and do what they please. So that's, I mean, anybody could come in though. That's the point. That was the point of that case, right? It's a gas station. There are customers that can come in. People can come in. There's no fenced area around it that prohibits people from coming in. There's no security guard who's coming in. There's no controlled access. I thought that was the point of that case, is that there's just a lack of any controlled access. Well, it's not so much a function of what you can do relative to the rest of the world. The case talks about the relative rights of the two parties. What can the gas station do versus what can the owner of the public do? Right. So in our case, the Puritan case, the airplane case, we said that an airfield was the bailey of an airfield. Well, there's a couple of differences. First of all, that case happened to focus on the issue there. They even had a key to get in, right? No, no. They only had a key to the luggage compartment on the plane. They focused on what they had, which I guess I had a key to the luggage compartment, which changed nothing about the nature of either the use or the tied down nature of the plane. And an FBO, I think, is a unique circumstances for a lot of reasons. But very similarly, there's the Fireman's Fund case where you had a gated area. You had a guard. You had to log in. You had to log out before you went in and got your truck. And there, the court found it was not a bailment because you just had to log in and go in and get your stuff. And if you wanted to get it, you could take it right back out. And so there's a- What case was that? Fireman's Fund, Your Honor. Fireman's Fund. Okay. Thank you. And so Fireman's Fund is a lot like this case. They come in. They have the right to come in. They got to log in. They got to be written down at the guard gate. There's a fence. There's a guard. That's the whole point of the lot. But you can come in and out as you please. And so Fireman's Fund is a lot like this case. And then the second important distinction with Puritan is, again, this isn't an FBO. This isn't an airplane that's tied down that can't be flown while it's there. In this case, they're literally paying us the right to be using their stuff the whole time it's there. That is literally what they bargained for. And the sine qua non of this arrangement is, we need a place where we can actually run our systems from afar 24-7. That's a very important distinction, I think, even in the context of a bailment claim. And again, all of this comes down to the fact that these companies negotiated what they were getting. If you wanted to look at the implied contract, implied in fact, or unjust enrichment cases, it's all the same thing. An important distinction here is Judge Jordan's Prohius v. Fizer case talks about this type of thing and unjust enrichment. Judge Jordan said there's no unjust enrichment because you got the benefit of your bargain. You paid for something and you got what you paid for. In this case, it's exactly what was found by Judge Ruiz. You wrote a check for rent. You got the security that your contract provided for. How could you ever bail out unjustly enriched by getting what you asked for? We have your argument, Mr. Diamond. You've reserved some time. Thank you, Your Honor. No, you haven't reserved some time. We do have your argument. I'll reserve the remaining one minute and 44 seconds, if that's okay. Oh, I'm beyond that. I haven't reserved anything, so I thank you. I missed the flashing red light. Mr. Ragelson. So there are a couple of things. The fire fund, the Fireman's Fund Insurance v. Panepina case, it's the same thing that Judge Brashear mentioned regarding the Southwest Airlines case. In that case, you had an individual named Yarracena, and they can never stop someone from entering into the parking lot because it was an open parking lot. And there were trucks that did not need Yarracena's permission because they all had keys. So it was essentially anyone can come in, and it's essentially the same thing. This case is more clearly associated with or like Puritan. But in Puritan, the owner didn't have a way of getting in, right? The owner had a way of getting in. He certainly did. Not only did he- Not by himself. He had to go through certain steps. Like in this case. Exactly. He had to go through certain steps. He can't just show up and say, I'm here. Like in this case, where there was a ticketing system and an approval system and all of the other things that have to be done in this case. And what was testified to and what was included in the complaint. And I don't want it to be lost to anyone because it seems like throughout this argument, and maybe it's my fault a little bit as well, that we're almost forgetting where we are in this case. This is in a motion to dismiss face. This is not in a summary judgment. The facts have not been solidified. So the arguments that opposing counsel made regarding he can come in at any time if the lights turned out at 3 a.m., he can go and check his servers. There's no testimony as to that. That's not in the complaint. That's nowhere. So the fact that he's saying that may be interesting. It may come down the line, but it's certainly not germane to where we are procedurally in this case. And I don't think we should lose that. And it's the same with going down the contractual right. And this kind of juxtaposed to what Judge Ruiz found. Judge Ruiz didn't say that I'm throwing this case out because there was a contractual right and you guys don't have a claim. Judge Ruiz said, you sued the wrong people. And then when we moved to amend or when prior counsel moved to amend, that leave to amend was denied because it was futile because nothing that he can do can bring in the right people in that particular case within the gambit of those particular service agreements. If we look at the master service agreement, if we look at the innovation agreement, if we look at all the other agreements that were exhibits in this case, none of them relate to this particular party. None of them relate to the owners of this store. I almost called it a storage facility. I apologize. The server warehouse or the server area. So it goes really down to... I don't understand that. I don't understand what you're saying by that. I thought that through the initial agreement, the second version of the agreement, the innovations, the amendments, the assignments, you're now suing the owner of the facility. Is that not right? That's correct. We're suing the owner of the facility. The innovation agreement has a different party. And frankly, that's kind of what they argued, what the opposing side has argued in the first motion for summary judgment, motion to dismiss, saying that you don't have the right to do that. And then it was subsequently amended. And Judge Rue was throughout the case, not because there was a contract that somehow made it impossible for these claims to have accrued, but because the party was wrong. And that's why it was subsequently refiled in state court and then removed to federal court. It had everything to do about the parties, nothing to do about the contract. That's very clear from the record. It's very clear from even a brief review of the contract. I don't want to take up any more of this court's time. I think the court understands my argument. I think that the bailment is not the position. Exclusive control does not mean you can't come in. The answer is no, because I've got it in my possession. That would defeat the point of a bailment. And it's very similar to what Judge Beshear said regarding the cotton example or the gold example. I don't think there is a claim in this case. There hasn't been a claim or whatever. The only claim made in this case at the motion to dismiss stage, the only claim that was made is that the actual chips were not in the dim slots, that no investigation was done, even though they promised it would be done according to what a tier one facility is. This is based not on conclusory statements with the lower tribunal found, but based on actual testimony that was incorporated, cited to in the amended complaint. To say that it was simply conclusory statements, it goes beyond the amended complaint. Thank you, Your Honors, for your time. My time has expired. I hope you have a wonderful rest of your day. All right. Thank you. The court will be in recess for 15 minutes. Thank you.